IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DIANE STARK                                                                    PLAINTIFF

V.                                                    CIVIL ACTION NO. 2:13cv31-KS-MTP

UNIVERSITY OF SOUTHERN MISSISSIPPI,
JEFF HAMMOND, INDIVIDUALLY AND OFFICIALLY,
DR. MARTHA SAUNDERS, INDIVIDUALLY AND OFFICIALLY;
BOARD OF TRUSTEES OF STATE INSTITUTIONS OF
HIGHER LEARNING                                                            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Defendant Dr. Martha Saunders' Motion to Dismiss [62] and the Plaintiff Diane Stark's Motion to Strike Reply Since the Reply Was Filed Eleven Days Past Deadline Without Court Permission ("Motion to Strike") [90]. Having considered the submissions of the parties, the record, and the applicable law, the Court finds that both motions should be granted in part and denied in part.

## BACKGROUND

Plaintiff asserts numerous federal and state law claims relating to her former employment with the University of Southern Mississippi ("USM") as the Senior Associate Athletics Director for Internal Affairs. Defendant Dr. Martha Saunders was the President of USM at certain times relevant to the Plaintiff's employment. Defendant Jeff Hammond was the Interim Athletics Director at certain times relevant to the Plaintiff's employment. The Defendant Board of Trustees of State Institutions of Higher Learning (the "Board") is charged with the management and control of Mississippi's state institutions of higher learning, such as USM, under Mississippi law. *See* Miss. Const. art. 8, § 213-A; Miss. Code Ann. § 37-101-1.

On November 7, 2012, Plaintiff filed suit against USM, Jeff Hammond, and Dr. Saunders in the Circuit Court of Forrest County, Mississippi.  (*See* State Compl. [1-2 at ECF p. 4].)  The Complaint asserts the following claims for relief under state law: intentional infliction of emotional distress; negligent infliction of emotional distress; breach of implied contract; constructive discharge; outrage; negligence; menace; promissory estoppel; equitable estoppel; and detrimental reliance.  It is alleged, *inter alia*, that Hammond made the workplace intolerable, that USM and Dr. Saunders ratified Hammond's conduct, that USM breached a contractual obligation to compensate the Plaintiff through June of 2012, and that the Plaintiff was wrongfully terminated as a result of reporting Hammond's misconduct.

On February 6, 2013, the Plaintiff filed an amended pleading in the state court, adding federal claims under Title VII, the Equal Pay Act, and the Lilly Ledbetter Fair Pay Act.  (*See* State Am. Compl. [5 at ECF p. 74].)  These federal claims center upon alleged gender discrimination.

On February 15, 2013, Hammond removed the proceeding to this Court.  (*See* Notice of Removal [1].)  Subject matter jurisdiction is asserted under Title 28 U.S.C. § 1331 based on the federal claims alleged in the Plaintiff's amended state court pleading. On February 18, 2013, USM and Dr. Saunders joined in and consented to the removal. (*See* Doc. No. [3].)

On July 10, 2013, Plaintiff filed her Amended Complaint [38] in this Court, adding the Board as a Defendant.  The Amended Complaint also includes a cause of action under 42 U.S.C. § 1983 for alleged deprivations of Plaintiff's Equal Protection and Due Process rights, as well as her rights guaranteed by the First Amendment of the United

States Constitution.  (*See* Am. Compl. [38] at ¶ 7.)

On August 26, 2013, Dr. Saunders filed her Motion to Dismiss [62] pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dr. Saunders seeks the dismissal of all claims asserted against her in her individual capacity under 42 U.S.C. § 1983.  On November 27, 2013, the Plaintiff filed her Motion to Strike [90], arguing that Dr. Saunders' Reply [89] in support of the dismissal motion should not be allowed due to untimeliness.

## DISCUSSION

### I.   Motion to Strike [90]

Dr. Saunders' Reply was due to be filed by November 14, 2013, since the Plaintiff filed her Response to the Motion to Dismiss [87] on November 4, 2013.  *See* Fed. R. Civ. P. 6(a), (d); L.U.Civ.R. 7(b)(4).  Dr. Saunders admits that the November 25 Reply [89] was untimely, but argues that the Plaintiff can show no prejudice as a result of the late filing.  Dr. Saunders further asserts that she mistakenly believed Plaintiff's counsel would not object to the late filing since the Plaintiff obtained unopposed extensions of time from the Court on several occasions.

The Court agrees that there is no evidence of prejudice to the Plaintiff resulting from the eleven-day delay in Dr. Saunders' filing of the Reply.  However, a party seeking an extension of time to act after a deadline expires must show "excusable neglect" under Federal Rule of Civil Procedure 6(b)(1)(B), and prejudice to the opposing side is only one factor that courts usually consider in such a determination.  Other factors include "the length of the applicant's delay and its impact on the proceeding, the reason for the delay and whether it was within the control of the movant, and whether the movant has acted in good faith."  4B Charles Alan Wright et al., *Federal Practice*

*and Procedure* § 1165 (3d ed.) (citations omitted).  Dr. Saunders' mistaken assumption

that Plaintiff's counsel would voice no objection to the late filing of the Reply does not fit

neatly within the scope of these other factors.

More important, Dr. Saunders has failed to move for leave to file the Reply out of

time.  Under Rule 6(b), a court may extend a period of time for a party to act "*with or*

*without motion* or notice if the court acts, or if a request is made, before the original time

or its expiration expires".  Fed. R. Civ. P. 6(b)(1)(A) (emphasis added).  "[A]fter the time

has expired", a party must file a "motion" in order to obtain relief from the expired

deadline.  Fed. R. Civ. P. 6(b)(1)(B); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S.

871, 896, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) ("[A]ny *post*deadline extension

must be upon motion made, and is permissible only where the failure to meet the

deadline was the result of excusable neglect.") (citation and internal quotation marks

omitted).  Dr. Saunders' Response to Plaintiff's Motion to Strike [91] does not qualify as

a motion.  *See* L.U.Civ.R. 7(b)(3)(C).  Accordingly, the Motion to Strike [90] is granted to

the extent that Dr. Saunders' Reply [89] will not be considered in the Court's disposition

of the Motion to Dismiss [62].  The motion is denied to the extent that it may be

construed to request that the Reply [89] be stricken from the record.

## II.    Motion to Dismiss [62]

### A.    Standard of Review

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.

Ed. 2d 929 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; *see also In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) ("To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).  A complaint containing mere "labels and conclusions, or a formulaic recitation of the elements" is insufficient.  *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012) (citation and internal quotation marks omitted). Although courts are to accept all well-pleaded facts as true and view those facts in the light most favorable to the nonmoving party, courts are not required "to accept as true a legal conclusion couched as factual allegation."  *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted).  Ultimately, the court's task "is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."  *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

### B.    Analysis

Dr. Saunders asserts that she is entitled to qualified immunity on the Plaintiff's constitutional claims brought under 42 U.S.C. § 1983.  Section 1983 does not provide a general remedy for state law torts or allow access to federal courts for all individuals

suffering injuries at the hands of state actors.  *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981).  The statute "affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Id.* (quoting 42 U.S.C. § 1983).  To state a cognizable § 1983 claim, "'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'"  *Doe ex rel. Magee v. Covington County Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *James v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008)).

A state official sued in his individual capacity under § 1983 is protected by qualified immunity insofar as his "'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  "'Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised.'"  *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)).  "Overcoming qualified immunity requires showing that (1) an official's conduct violated a constitutional right of the plaintiff and (2) that right was clearly established at the time of the violation."  *Williams v. City of Cleveland, Miss.*, 736 F.3d 684, 688 (5th Cir. 2013) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).  Courts have discretion to address the second inquiry first.  *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

Plaintiff's First Amendment, Equal Protection, and Due Process claims will now be measured against the preceding standards.

### 1.  First Amendment

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006) (citations omitted).  To establish a First Amendment retaliation claim, a plaintiff must show "that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct." *Gibson v. Kilpatrick*, 734 F.3d 395, 400 (5th Cir. 2013) (citing *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011)).  The Fifth Circuit has recognized that in *Garcetti*, the Supreme Court "added a threshold" consideration to the second "public concern" inquiry.  *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008).  "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.  Whether an employee's speech is protected under the First Amendment is an issue of law. *Elizondo v. Parks*, 431 Fed. Appx. 299, 303 (5th Cir. 2011) (citing *Charles v. Grief*, 522 F.3d 508, 512 (5th Cir. 2008)).

The following allegations of the Amended Complaint arguably implicate a First Amendment retaliation claim:

Mr. Jeff Hammond has used his position to threaten, intrude upon, frighten, attempt to extract funds from, act outrageously, intimidate, insult, disrespect, yell at, confront, and threaten violence in the work place of Plaintiff. Dr. Saunders intentionally ratified his misconduct and intentionally contributed to the work place hostility by her acts and ratifications.

    . . . .

As a direct and proximate result of the foregoing tortious actions of Mr. Hammond, Plaintiff filed appropriate grievances and claims with USM. President Saunders and her staff refused to provide appropriate relief to Plaintiff. Indeed, President Saunders stated, words to the effect, that Plaintiff deserved or probably "needed" her mistreatment or words to that effect.

    . . . .

Plaintiff complained and reported the wrongdoings of Mr. Hammond to her supervisors, Human Resources, and others to include the President, Dr. Saunders. Furthermore, as previously accentuated, the specifics, as enumerated herein, were provided IHL. The President was informed of Plaintiff's complaints; yet, sided with Mr. Hammond and took the position that Plaintiff deserved her mistreatment. She ratified the misconduct of Mr. Hammond and provided no relief to Plaintiff. IHL also sided with Mr. Hammond to the distinct detriment of Plaintiff.

    . . . .

The Defendants, overtly, actively, and/or by ratification, and/or by and through their agents and representatives, retaliated against Plaintiff, who had reported and/or refused to engage in illegal acts or illegal conduct of Defendants. Mr. Hammond had assaulted Plaintiff and wrongfully placed her in fear of bodily harm. Although the assault was not consummated by a battery, Mr. Hammond's conduct did place Plaintiff in reasonable apprehension of bodily harm. She reported this conduct. Then, she was retaliated against for her reporting these acts. The Defendants countenanced and/or ratified this conduct.

As a proximate result of Plaintiff reporting the foregoing misconduct, she was wrongfully dismissed and terminated and retaliated against.

    . . . .

It is evident she was fired because she had complained about the harassment of her by Mr. Hammond. In spite of asking for assistance from USM, no assistance was forthcoming. Indeed, USM, via Mr. Hammond and

their Human Resources Department, and Dr. Saunders aggressively mistreated Plaintiff and retaliated against her for complaining about her mistreatment.

(Am. Compl. [38] at ¶¶ 11, 13, 21, 25, 26, 35.)

Dr. Saunders largely challenges the sufficiency of Plaintiff's pleading as to the "public concern" element of her retaliation claim. Thus, the Court initially considers the threshold matter of whether the Plaintiff's grievances regarding Jeff Hammond were made pursuant to her official employment duties. *See Garcetti*, 547 U.S. at 421. *Garcetti* did not establish a comprehensive framework for determining the scope of a public employee's job duties where the issue is disputed between the parties, "thus signaling that lower courts must flesh out the distinction between official and citizen speech." *Gibson*, 734 F.3d at 401 (citing *Garcetti*, 547 U.S. at 424). The Fifth Circuit has found that "[c]ases from other circuits are consistent in holding that when a public employee raises complaints or concerns up the chain of the command at his workplace about his job duties, that speech is undertaken in the course of performing his job." *Davis*, 518 F.3d at 313 (citations omitted). In *Davis*, the Fifth Circuit analyzed various communications made by an internal auditor for a public university and determined that some aspects of the communications (for example, her concerns about the university's inadequate response to her audit investigation directed to university officials) were related to her job duties, while other aspects (such as her concerns about child pornography directed to the FBI) had "nothing to do with her job function as an internal auditor and therefore were made as a citizen." *Id.* at 315-16. In addition, the Fifth Circuit has held that a high school athletic director was acting as a public employee and not as a private citizen in writing memoranda to the principal regarding athletic

accounts.  *See Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693-94 (5th Cir. 2007).  Although the athletic director was not required to write the memoranda under the scope of his employment, the written statements related to his job duties since they focused on his daily operations.  *See id.*  The Fifth Circuit has also noted that written job descriptions or statutory definitions, while not controlling, may inform a court's determination of whether speech is made pursuant to an official's duties.  *See Gibson*, 734 F.3d at 403.

Neither the allegations of the Complaint nor the parties' briefs on the dismissal motion enable the Court to hold as a matter of law that the Plaintiff's grievances concerning Jeff Hammond were made pursuant to her employment duties at USM.  The Plaintiff's grievances and claims filed with USM are not before the Court.  Thus, the Court is unable to determine whether any grievance or complaint specifically addressed the Plaintiff's daily activities or operations.  In addition, the Court is unfamiliar with the duties required of the Plaintiff in her former position as the Senior Associate Athletics Director for Internal Affairs.  The Court nonetheless finds, at least for Rule 12(b)(6) purposes, it plausible that the Plaintiff was acting outside the scope of her official employment when she voiced her various grievances regarding Hammond.  *Cf. Smith v. N. Bolivar Sch. Dist.*, No. 2:07cv51, 2008 WL 4450295, at *8 (N.D. Miss. Sept. 29, 2008) (noting that the pleadings failed to show that the plaintiff's reporting of threats was a part of his job duties); *Sanders v. Leake County Sch. Dist.*, 546 F. Supp. 2d 351, 355 (S.D. Miss. 2008) ("Here, no reasonable argument could be made that plaintiff filed her EEOC charge of discrimination pursuant to any official duty of her job or in the course of performing her job . . . .").

-10-

The Fifth Circuit has summarized the applicable law when the "public concern" inquiry moves beyond the *Garcetti* threshold:

> Whether speech is of public concern is "determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147–48, 103 S.Ct. 1684. "Because almost anything that occurs within a public agency *could* be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee." *Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362 (5th Cir.1986). Rather than looking at whether the public might or would have an interest in the matter, the court examines whether the speaker's motivation was to speak primarily as a citizen or as an employee. *Dodds v. Childers*, 933 F.2d 271, 273 (5th Cir.1991). In cases of mixed speech or motives, "the speaker must have spoken *predominantly* 'as a citizen' to trigger First Amendment protection." *Id.* at 274 (citation omitted). If the speech is not of public concern, we do not question the employer's motivations for taking action against the employee. *Id.* at 273.

*Harris ex rel. Harris v. Pontotoc County Sch. Dist.*, 635 F.3d 685, 692 (5th Cir. 2011).

The apparent content of the Plaintiff's grievances (Jeff Hammond's alleged insults, threats of violence, disrespect toward the Plaintiff, and other purported misconduct)[1] arguably touches upon a matter of public concern.  *See Stotter v. Univ. Tex. at San Antonio*, 508 F.3d 812, 826 (5th Cir. 2007) ("[B]ecause Dr. Stotter made an allegation of malfeasance by state officials, which arguably is an issue of public concern, the memo at issue should be treated as mixed speech.") (internal citation omitted).  However, the form and context of the grievances lead the Court to conclude that the Plaintiff's speech concerns an "[i]nternal personnel dispute[]", falling outside the protections afforded by the First Amendment.  *Id.* at 827.

Other than the Plaintiff's labeling of herself "as a Whistleblower",[2] which carries

---

[1] (Am. Compl. [38] at ¶ 11.)

[2] (Am. Compl. [38] at ¶ 48.)

no weight in a Rule 12(b)(6) analysis,[3] the allegations of the Complaint do not lead to the plausible conclusion that the Plaintiff was attempting to shed public light on Jeff Hammond's alleged wrongdoings.  *See Connick v. Myers*, 461 U.S. 138, 148, 154, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) (finding that the plaintiff did not attempt to inform the public of any alleged wrongdoing in reversing the lower court's finding of a first amendment violation); *Stotter*, 508 F.3d at 827 ("There is simply no evidence that in writing this memo, Dr. Stotter was trying to publicize allegations of corruption."). Plaintiff's complaints appear to have traversed through the following chain of command: (i) her supervisors at USM; (ii) Human Resources at USM; (iii) Dr. Saunders, USM's President; and (iv) the Board, which manages and controls USM.  (*See* Am. Compl. [38] at ¶ 21.)  It is implausible to conclude that the Plaintiff was attempting "to air h[er] complaints in a manner that would call the public's attention to the alleged wrong" by complaining to the preceding individuals and entities associated with her governmental employer.  *Ayoub v. Tex. A & M Univ.*, 927 F.2d 834, 837-38 (5th Cir. 1991) (affirming the district court's holding that the plaintiff's speech was not protected).

The fact that the Plaintiff eventually filed charges with the Equal Employment Opportunity Commission ("EEOC") fails to alter the nature of this personal employment dispute for First Amendment purposes.  Several authorities have found speech to be private in nature notwithstanding the existence of an EEOC charge.  *See, e.g.*, *Cutrer v. McMillan*, 308 Fed. Appx. 819, 821-22 (5th Cir. 2009); *Ayoub*, 927 F.2d at 837-38;

---

[3] "We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Gentiello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citations omitted).

-12-

*Sanders*, 546 F. Supp. 2d at 358-59; *Bates v. Univ. of Tex. Med. Branch*, 425 F. Supp. 2d 826, 848 (S.D. Tex. 2003).  "Lodging a complaint with the EEOC, without further airing of grievances, implicates only the private employment interests of the plaintiff and is not conduct that constitutes speech on a matter of public concern."  *Cutrer*, 308 Fed. Appx. at 821 (citing *Short v. City of West Point, Miss.*, 1997 WL 575048, at *1 (5th Cir. 1997)).  The Court's review of the Plaintiff's EEOC filings indicates that her primary concern with any alleged mistreatment was its effect on her employment and wages, as opposed to any potential effect on the interest of the public at large.[4]

For the foregoing reasons, the Court finds that the Plaintiff was primarily speaking as an employee and not a public citizen in asserting her various grievances regarding Jeff Hammond.  Thus, the Plaintiff has failed to state a legally cognizable violation of the First Amendment, and no consideration of the objective reasonableness of Dr. Saunders' conduct (the second prong of the qualified immunity analysis) is necessary.  Dr. Saunders' request for dismissal of this claim will be granted.

---

[4] The Court may consider the Plaintiff's EEOC Charges of Discrimination [87-2] without running afoul of Rule 12(b)(6) since they are discussed in the Complaint.  *See McNatt v. NPC Int'l, Inc.*, No. 1:10cv330, 2012 WL 884887, at *2 n.1 (N.D. Miss. Mar. 14, 2012) (citation omitted).  That Plaintiff's EEOC filings allege discrimination based on sex is not being overlooked.  Certainly, gender discrimination in the workplace raises an issue of public concern.  However, "that concern has been addressed by the enactment of Title VII, which covers retaliation in private employer-employee disputes."  *Bates*, 425 F. Supp. 2d at 848 n.15.  The Court's ruling on the Plaintiff's First Amendment claim does not dispose of her allegations under Title VII.  Moreover, the alleged misconduct of Jeff Hammond giving rise to the Plaintiff's grievances and her resulting First Amendment retaliation claim appears to be separate and distinct from the unequal pay and failure to promote allegations underlying the Plaintiff's Title VII claims.  *Cf. Hudson v. Leake County Sch. Dist.*, No. 3:08cv90, 2009 WL 1111181, at *5 n.7 (S.D. Miss. Apr. 21, 2009) (dismissing the plaintiff's First Amendment retaliation claim, and noting that the plaintiff's alleged protected speech did not encompass the allegations of racial discrimination underlying her Title VII claims).

### 2.    Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Discrimination on the basis of sex violates the Equal Protection Clause irrespective of Title VII.  *See Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 549-50 (5th Cir. 1997).  Nonetheless, employment discrimination claims brought under § 1983 "are analyzed under the evidentiary framework applicable to claims arising under Title VII . . . ."  *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999) (citations omitted).

Plaintiff's equal protection claims asserted under 42 U.S.C. § 1983 essentially "parallel" or duplicate her allegations of gender discrimination brought under Title VII. (Am. Compl. [38] at ¶ 47.)  Plaintiff alleges that she "has been the victim of unlawful discrimination, based upon sex and based upon her filing charges of discrimination against USM and others representing USM."  (Am. Compl. [38] at ¶ 29.)  More specifically, the Plaintiff asserts that she was effectively banned from USM in the months leading up to her termination, and that during this time she was not paid although similarly situated "males, who were not physically on the USM campus were paid."  (Am. Compl. [38] at ¶ 38.)  Plaintiff also contends that the hiring of Jeff Hammond as Athletic Director was discriminatory since:  (i) he was not qualified for the position; (ii) she "was the person with the most qualifications and knowledge regarding the Athletic Director position"; and (iii) no female was afforded the opportunity to apply for the job.  (Am. Compl. [38] at ¶ 41.)

Dr. Saunders first argues that the Plaintiff is asserting a "class-of-one" equal

-14-

protection claim that is proscribed by the Supreme Court's decision in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008).  In *Engquist*, the Court held that a class-of-one theory of equal protection—where a plaintiff does not allege discrimination on the basis of membership in some group or class, but rather argues only that she was treated by her employer worse than other similarly situated employees—"has no place in the public employment context."  553 U.S. at 594.  As noted above, the Plaintiff alleges discrimination "based upon her sex" and contends that "no female" was permitted to apply for the Athletic Director position.  (Am. Compl. [38] at ¶¶ 29, 41.)  Therefore, the Plaintiff has asserted a claim of discrimination based upon membership in a particular class, women, and *Engquist* does not require the dismissal of this claim.  *Cf. King v. Lawrence County Bd. of Educ.*, No. 2:12cv68, 2013 WL 319286, at *6 (S.D. Miss. Jan. 28, 2013) (rejecting the defendant's class-of-one argument since the plaintiff alleged racial discrimination).

Dr. Saunders next argues that the Plaintiff has failed to identify, with factual particularity, similarly situated individuals who were treated differently.  To establish a prima facie case of gender discrimination, a plaintiff must allege, *inter alia*, that she was treated less favorably than a similarly situated employee outside her protected class. *See Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)).  Plaintiff identifies Scott Klingler and Richard Giannini as the males who, unlike herself, were paid in full while they were not present on USM's campus.  (*See* Am. Compl. [38] at ¶ 44; May 2, 2012 EEOC Charge of Discrimination [87-2 at ECF pp. 1-2].)  As to Plaintiff's failure to promote claim, she identifies Jeff Hammond as the individual

-15-

"outside the protected class" who "filled"[5] the position for which she was purportedly better qualified.  (*See* Am. Compl. [38] at ¶ 41.)  Upon consideration of the Plaintiff's averments, the Court finds that she has presented "sufficient factual matter, accepted as true, to" deny this basis for dismissal.  *Iqbal*, 556 U.S. at 678.

Dr. Saunders further asserts that the Plaintiff has "failed to allege any specific conduct by which Saunders violated any rights secured by" the Equal Protection Clause.  (Dr. Saunders' Mem. of Law in Supp. of Mot. to Dismiss [63] at p. 9.)  This argument is well taken with respect to the Plaintiff's unequal pay allegation, but not her failure to promote claim.  A supervisory official "cannot be held liable under § 1983 for the actions of subordinates on any theory of vicarious liability."  *Hampton v. Oktibbeha County Sheriff Dep't*, 480 F.3d 358, 365 (5th Cir. 2007) (citing *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985)).  The complainant must show "that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation."  *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) (citation omitted).  The Amended Complaint [38] is devoid of facts leading to the reasonable inference that Dr. Saunders was personally involved in the determinations to pay Scott Klingler and Richard Giannini, and not to pay the Plaintiff.  Short of "speculative" assumptions and reasoning, the allegations of the Amended Complaint [38] also fail to establish any causal connection between Dr. Saunders' actions and the aforementioned pay disparity.  *In re Great Lakes Dredge & Dock Co.*, 624 F.3d at 210.  Plaintiff's assertion that all Defendants "contributed to or

---

[5] *Hudson*, 2009 WL 1111181, at *6 (listing the elements of a failure to hire/promote claim) (citation omitted).

were moving forces behind the loss of Equal Protection rights"[6] is an inoperative legal conclusion.  *See Iqbal*, 556 U.S. at 678.

Conversely, the Plaintiff has pled factual content concerning Dr. Saunders' personal involvement in the alleged discriminatory hiring of Jeff Hammond.  "Indeed, one of her complaints dealt with the discriminatory hiring of Mr. Hammond as Athletic Director and Interim Athletic Director.  Dr. Saunders was determined to provide him the position even though he was not qualified for it."  (Am. Compl. [38] at ¶ 41.)  "President Saunders named Jeff Hammond as interim athletics director. . . .  I was the highest ranking administrator in the athletic department."  (March 13, 2012 EEOC Charge of Discrimination [87-2 at ECF p. 4].)  These averments, taken as true, adequately tie Dr. Saunders to the alleged violation of Plaintiff's equal protection rights based on the hiring of Jeff Hammond, i.e., the failure to promote the Plaintiff, for purposes of Rule 12(b)(6).  Thus, the Court next considers "whether the right at issue was clearly established at the time of the defendant's alleged misconduct."  *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (citation omitted).

Plaintiff had a clearly established constitutional and statutory right to be free from gender discrimination in the workplace at the time of the alleged violations at issue in this case.  *See, e.g.*, *Saucedo-Falls v. Kunkle*, 299 Fed. Appx. 315, 323 (5th Cir. 2008); *Southard*, 114 F.3d at 550.  Moreover, the failure to promote an employee based on their membership in a protected class was constitutionally proscribed at the time of the purported misconduct.  *See Irby v. Sullivan*, 737 F.2d 1418, 1431 (5th Cir. 1984).

---

[6] (Am. Compl. [38] at ¶ 47.)

"When a plaintiff's allegations are sufficient to state a claim for intentional discrimination, an immunity defense will generally be foreclosed at the pre-discovery stage, as intentional racial [or gender] discrimination is never objectively reasonable." *King*, 2013 WL 319286, at *4 (citing, *inter alia*, *Piatt v. City of Austin*, 378 Fed Appx. 466, 469 (5th Cir. 2010); *Blackwell v. Laque*, 275 Fed. Appx. 363, 367-68 (5th Cir. 2008)). Thus, the Court finds that Dr. Saunders is not entitled to qualified immunity on the Plaintiff's failure to promote claim at this stage of the proceedings.

In summary, the Plaintiff's claim against Dr. Saunders under § 1983 for violation of her right to equal protection based on unequal pay will be dismissed for failure to state a claim, whereas the Plaintiff's failure to promote claim (grounded on the same legal bases) will proceed past the pleading stage. Dr. Saunders may seek dismissal of this remaining cause of action at the summary judgment stage or at trial.

### 3. Due Process

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. There can be no deprivation of substantive or procedural due process in the absence of a protected property right or liberty interest. *See, e.g.*, *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997); *DePree v. Saunders*, No. 2:07cv185, 2008 WL 4457796, at *7 (S.D. Miss. Sept. 30, 2008), *aff'd*, 588 F.3d 282 (5th Cir. 2009). "Constitutionally protected property interests are created and defined by understandings that 'stem from an independent source such as state law . . . .'" *DePree*, 588 F.3d at 289 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). Liberty interests may arise from state law or the Due

-18-

Process Clause itself.  *See Rhodes v. Thaler*, 713 F.3d 264, 266 n.9 (5th Cir. 2013)

(citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed.

2d 506 (1989)).

The following allegations of the Amended Complaint arguably implicate

substantive and procedural due process claims:

> As a direct and proximate result of the foregoing tortious actions of Mr. Hammond, Plaintiff filed appropriate grievances and claims with USM. President Saunders and her staff refused to provide appropriate relief to Plaintiff.  Indeed, President Saunders stated, words to the effect, that Plaintiff deserved or probably "needed" her mistreatment or words to that effect.
>
> . . . .
>
> At one point, on or about December 2011, USM promised to provide funds and compensation and benefits to Plaintiff through June 2012.  Then, they broke this promise, did not keep their word, and violated this contractual obligation.  As a proximate result, Plaintiff has been harmed to this additional extent.
>
> Additionally, the employee Handbook, as has been conceded by the President and Human Resource Director in previous litigational matters, affords the Plaintiff the contractual right to have her grievances and complaints and reporting of wrongdoing heard and addressed and investigated.  These rights are contractual.  They have been breached since they have not been afforded Plaintiff.
>
> . . . .
>
> As a proximate result of Plaintiff reporting the foregoing misconduct, she was wrongfully dismissed and terminated and retaliated against.  Plaintiff refused to engage in, participate, approve of, or ratify the foregoing illegal acts. Indeed, the enduring or permitting the occurrence of these acts became a condition of her employment.  This practice is anathema to Mississippi's jurisprudence.  Plaintiff is a classic Whistleblower as defined by Mississippi case law and jurisprudence.  Consequently, she asks for relief regarding this civil action.  Since Plaintiff is a Whistleblower, pursuant to Mississippi case law, she is not an at will employee irrespective of the fact that she also had a property interest in her employment.
>
> . . . .

-19-

Furthermore, Plaintiff had, pursuant to her status as a Whistleblower and otherwise, a Due Process Right not to be subjected to arbitrary and capricious treatment. This treatment deprived her of her employment, the benefits her employment entitled her, as well as the procedural due process deprivations regarding the ignoring of her complaints and grievances provided at USM. Again, IHL ratified these violations.

It is undisputed that the applicable Handbooks entitled Plaintiff to a prompt, remedial resolution of her complaints and grievances regarding her mistreatment as described *supra*. That due process right was deprived by Defendants or ratified by Defendants.

(Am. Compl. [38] at ¶¶ 13, 23, 24, 26, 48.)

### a.   Procedural Due Process

Dr. Saunders chiefly argues that the Plaintiff's due process claims fail because she lacked a protected property interest in her continued employment at USM. At will employees have no constitutionally protected property interest in employment. *See, e.g.*, *Vance v. N. Panola Sch. Dist.*, 31 F. Supp. 2d 545, 548 (N.D. Miss. 1998), *aff'd*, 189 F.3d 470 (5th Cir. 1999); *Levens v. Campbell*, 733 So. 2d 753, 763 (¶¶ 45-46) (Miss. 1999). The Plaintiff seeks to avoid this general rule on three grounds: (1) she had an oral contract that required remuneration through June of 2012; (2) she was a whistleblower not subject to the rule of employment at will pursuant to the Mississippi Supreme Court's decision in *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603 (Miss. 1993);[7] and (3) she possessed a contractual right to have her grievances and

---

[7] In *McArn*, the Mississippi Supreme Court recognized "a narrow public policy exception to the" doctrine of employment at will in two circumstances: "(1) an employee who refuses to participate in an illegal act . . . shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer." 626 So. 2d at 607.

complaints processed in accordance with USM's employee handbook.

Assuming *arguendo* the existence of a valid oral contract, the Amended Complaint is lacking in factual content showing that Dr. Saunders was a contracting party or that she breached the agreement.  Plaintiff's conclusory allegations that "USM promised to provide funds" and that "*they* broke this promise"[8] are insufficient to subject Dr. Saunders to "individual liability" under § 1983 liability.  *Kohler v. Englade*, 470 F.3d 1104, 1114 (5th Cir. 2006) (citations omitted).  Therefore, the Amended Complaint fails to give rise to the plausible inference that Dr. Saunders was constitutionally required to provide the Plaintiff with notice and the opportunity to be heard before USM (or *they*) stopped providing the Plaintiff with compensation.

*McArn* clearly allows an individual terminated for reporting illegal acts to bring an "action in tort" against his former employer notwithstanding the employment at will doctrine.  *McArn*, 626 So. 2d at 607.  However, the Court is unaware of, and the Plaintiff fails to cite any authority holding that *McArn* establishes a *contractual* right to continued employment and a resulting property interest that is protected under the Due Process Clause.  The Court thus exercises its discretion to move to the second prong of the qualified immunity inquiry and hold that the Plaintiff's purported right to due process via *McArn* was not "clearly established at the time of the challenged conduct."  *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011)).  An official can be said to have violated clearly established law when, at the time of the subject "conduct, [t]he contours of [a] right [are]

---

[8] (Am. Compl. [38] at ¶ 23) (emphasis added).

sufficiently clear that every reasonable official would have understood that what he is doing violates that right.  We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.* (citation and internal quotation marks omitted).

The Fifth Circuit has recognized that "Mississippi courts have held that employee manuals become part of the employment contract, creating contract rights to which employers may be held, such as Dr. Whiting's right to the procedures outlined in the handbooks."  *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 345 (5th Cir. 2006) (citing *Robinson v. Bd. of Trs. of E. Cent. Junior Coll.*, 477 So. 2d 1352, 1353 (Miss. 1985); *Bobbitt v. The Orchard Dev. Co.*, 603 So. 2d 356, 361 (Miss. 1992)).  The Fifth Circuit has also determined "that where a property right to procedural protections existed under state law, those procedural guarantees constituted a property interest protected under due process."  *Id.* (citing *Samuel v. Holmes*, 138 F.3d 173, 177 (5th Cir. 1998)).  Thus, the Court is unable to hold at the pleading stage that the provisions of USM's employee handbook did not give rise to a protected property interest, or that Dr. Saunders' alleged failure to hear the Plaintiff's grievances and complaints was "objectively reasonable." *Jabary v. City of Allen*, No. 12-41054, 2013 WL 6153241, at *9 (5th Cir. Nov. 25, 2013) (reversing the district court's grant of qualified immunity to certain defendants, who were personally involved in the revocation of the plaintiff's business certificate without notice or the opportunity to be heard).  The Plaintiff's procedural due process claim brought against Dr. Saunders under § 1983 based on the procedures in USM's employee handbook will not be dismissed at this point in the litigation.  However, Dr. Saunders' entitlement to qualified immunity on this claim may be revisited after further factual

development at the summary judgment stage or at trial.

**b.** **Substantive Due Process**

The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)).  A plaintiff must make two showings to state a claim for deprivation of substantive due process in the context of public employment: "'(1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious.'" *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (quoting *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993)).  The guarantee of substantive due process "does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *County of Sacramento v. Lewis*, 523 U.S. 833, 848, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)).  Thus, typical state law torts, such as negligence, fail to implicate the Due Process Clause.  *See id.* at 849 ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.") (citations omitted); *Collins*, 503 U.S. at 129 ("The Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions.") (citation and internal quotation marks omitted).  The official's conduct must "'be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Doe ex rel. Magee*, 675 F.3d at 867 (quoting *County of Sacramento*, 523 U.S. at 847).  In *Doe ex rel. Magee*, the Fifth Circuit described the standard as follows:

-23-

Conduct sufficient to shock the conscience for substantive due process purposes has been described in several different ways. It has been described as conduct that "violates the decencies of civilized conduct"; conduct that is "so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency"; conduct that "interferes with rights implicit in the concept of ordered liberty"; and conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 846–47 & n. 8, 118 S.Ct. 1708 (citation and internal quotation marks omitted). Many cases that have applied the standard have involved the use of extreme force by police officers or other state actors. *See Checki v. Webb*, 785 F.2d 534, 535–36, 538 (5th Cir.1986) (state trooper intentionally used his vehicle to terrorize motorist and passenger); *Shillingford v. Holmes*, 634 F.2d 263, 264–65 (5th Cir.1981) (police officer intentionally struck tourist because he was photographing the police officer and fellow officers apprehending a boy on the street during a Mardi Gras parade), *abrogated on other grounds by Valencia v. Wiggins*, 981 F.2d 1440 (5th Cir.1993); *see also Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1071, 1075–76 (11th Cir.2000) (student blinded in one eye when a coach intentionally hit him in the head with a metal weight); *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 797 (8th Cir.1998) (rape of a woman at her house by a police officer after he stopped her for a traffic violation); *Hemphill v. Schott*, 141 F.3d 412, 418–19 (2d Cir.1998) (police officer provided assistance to a third party in shooting the plaintiff). As one court has recently summarized, "[t]he burden to show state conduct that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme." *J.R. v. Gloria*, 593 F.3d 73, 80 (1st Cir.2010) (citation and internal quotation marks omitted).

675 F.3d at 867-68.

Setting aside the issue of the Plaintiff's property interest in her former employment at USM, the Court finds that the Plaintiff has failed to plead facts showing that Dr. Saunders engaged in any conduct sufficiently shocking to state a substantive due process claim.  In essence, the Plaintiff contends that Dr. Saunders is individually liable for not addressing her grievances and for failing to afford her a safe workplace. (*See* Pl.'s Mem. in Supp. of Resp. to Mot. to Dismiss [88] at pp. 21-22.)  These failure to act contentions sound in negligence or implicate state personnel decisions that are

-24-

beyond the purview of substantive due process.  Further, the Supreme Court has held that "[n]either the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause."  *Collins*, 503 U.S. at 126.  Therefore, this claim perishes on the first prong of the qualified immunity analysis.

<u>**CONCLUSION**</u>

For the foregoing reasons:

IT IS ORDERED AND ADJUDGED that the Plaintiff's Motion to Strike [90] is granted in part and denied in part, as outlined above.

IT IS FURTHER ORDERED AND ADJUDGED  that Dr. Saunders' Motion to Dismiss [62] is granted in part and denied in part.  The following of the Plaintiff's claims brought against Dr. Saunders in her individual capacity under 42 U.S.C. § 1983 are dismissed without prejudice pursuant to Rule 12(b)(6):  (i) First Amendment retaliation claim; (ii) Equal Protection unequal pay claim; (iii) Procedural Due Process claim based on the existence of an alleged oral contract; (iv) Procedural Due Process claim based on *McArn v. Allied Bruce-Terminix Co.*; and (v) Substantive Due Process claim.  Plaintiff's Procedural Due Process claim based on USM's employee handbook and Equal Protection failure to promote claim remain pending against Dr. Saunders.

SO ORDERED AND ADJUDGED this the 25th day of March, 2014.

s/Keith Starrett
UNITED STATES DISTRICT JUDGE